AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

```
┌─────────────────────────────┐
│ ___ FILED ___ LODGED          │
│ ─── RECEIVED                  │
│ APR 16 2019                   │
│ CLERK U.S. DISTRICT COURT     │
│ WESTERN DISTRICT OF WASHINGTON AT TACOMA │
│ BY                   DEPUTY   │
└─────────────────────────────┘
```

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The black LG smart phone with IMEI 355931090690600,
more particularly described in Attachment A

Case No.  MJ19 - 5054

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A,

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1), 843(b), 846, and 952 | Drug trafficking conspiracy and related offenses |

The application is based on these facts:

See Attached Affidavit of DEA Agent Steve Meyer

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steve Meyer, Special Agent DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 04/16/2019 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington

J. Richard Creatura, United States Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT

STATE OF WASHINGTON )
                                     )   ss
COUNTY OF PIERCE        )

Steve Meyer, being first duly sworn on oath, deposes and says:

## I.   AFFIANT BACKGROUND AND EXPERIENCE

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington D.C., from June 2006 to April 2009. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

3.      During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in this current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of

AFFIDAVIT OF Steve Meyer - 1
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  monetary transactions involving the proceeds of specified unlawful activities; and

2  conspiracies associated with criminal narcotics offenses.  These investigations have

3  included use of the following investigative techniques: confidential informants;

4  undercover agents; analysis of pen register, trap and trace, and toll records; physical and

5  electronic surveillance; wiretaps; and the execution of search warrants.  I have had the

6  opportunity to monitor, listen to, review transcripts and line sheets (prepared by linguists)

7  documenting the content of intercepted conversations involving the trafficking of

8  cocaine, heroin, methamphetamine, and other narcotics, by persons who used some form

9  of code to thwart law enforcement.  I have also interviewed defendants at the time of

10  their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or

11  confidential sources (informants) at proffer interviews who were experienced in speaking

12  in coded conversations over the telephone.  I have gained knowledge regarding the

13  various methods, techniques, codes, and/or jargon used by drug traffickers in the course

14  of their criminal activities, including their use of cellular telephones and other electronic

15  devices to facilitate communications while avoiding law enforcement scrutiny.

## II.      PURPOSE OF AFFIDAVIT

17        4.      This Affidavit is submitted in support of an application for a warrant to

18  search a **black LG smart phone with IMEI 355931090690600,** seized from the person

19  of COREY RILEY on March 28, 2019, presently in the secure custody of the Drug

20  Enforcement Administration in Tacoma Washington, as described in Attachment A, for

21  evidence, fruits and instrumentalities of drug trafficking crimes committed by COREY

22  RILEY, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and

23  952, as further described in Attachment B.

## III.     SOURCES OF INFORMATION

25        5.      My knowledge of the facts set forth in this Affidavit is a result of my

26  personal participation in the investigation, my conversations with other law enforcement

27  personnel participating in this and related investigations, and my review of relevant

28  documents.  I have obtained and read the official reports prepared by various law

AFFIDAVIT OF Steve Meyer - 2
USAO 2017R01238

1   enforcement officers participating in the instant investigation, and other investigations
2   discussed herein.

3         6.    I know through training and experience, as well as the training and
4   experience of other law enforcement officers familiar with this investigation, that
5   individuals involved in the distribution of controlled substances and other criminal
6   activity often use vague references and/or coded words and phrases when discussing
7   illegal activity.  In this investigation, these communications have been conducted in both
8   the English and Spanish languages, and the participants frequently used coded language
9   to refer to drug-trafficking activity.  The Spanish recordings I have reviewed in
10  connection with this investigation were translated into English by individuals fluent in the
11  Spanish language.  When coded words and phrases were used in the instant investigation,
12  I have used my training and experience, as well as the training and experience of other
13  law enforcement officers familiar with this investigation and information provided by
14  confidential sources participating in this investigation, to include what I believe to be an
15  accurate translation of these coded words and phrases inside parentheses throughout this
16  Affidavit.

17        7.    Since I am submitting this Affidavit for the limited purpose of establishing
18  probable cause to obtain a search warrant for the cell phone identified above and in
19  Attachment A, I have set forth only the facts that I believe are necessary to establish
20  probable cause for this warrant.  As set forth herein, I believe RILEY used **a black LG**
21  **smart phone, with IMEI 355931090690600,** to facilitate drug trafficking in Western
22  Washington.

### IV.    SUMMARY OF PROBABLE CAUSE

**A.   Investigative Overview**

25        8.    Agents are investigating a drug trafficking organization (DTO) in Western
26  Washington they believe Juan and Florencio CASTRO Valenzuela and their associates,
27  including RILEY, and others known and unknown, are operating.  This organization is
28

AFFIDAVIT OF Steve Meyer - 3
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   referred to as the CASTRO DTO and is predominantly involved in the trafficking of
2   high-purity heroin, counterfeit oxycodone pills, and methamphetamine.

3          9.     This investigation started as a local drug investigation by the Bremerton
4   Police Department (BPD) in August 2017 when an individual (Confidential Source 1, or
5   CS1) agreed to cooperate with law enforcement in exchange for judicial considerations.
6   CS1 was arrested by members of the BPD Special Operations Group (SOG) for his/her
7   involvement in drug trafficking.  CS1 cooperated with SOG and provided them with
8   information about a group of Mexican drug traffickers who were distributing large
9   amounts of heroin in the Puget Sound region.  CS1 advised SOG that he/she had been
10   selling various controlled substances for several years and had been in contact with
11   several of the people within this group of Mexican drug traffickers, which agents named
12   the CASTRO DTO.

13          10.    Within that organization, CS1 connected with a prominent drug trafficker
14   whom the CS knew as "Juan" or "Jose."  CS1 believed the individual he/she knew as
15   "Juan" was the local leader of the drug distribution at that time, and was later promoted
16   to a larger role in the DTO.  BPD Detective Jordan Ejde located a Facebook account
17   under the name of "Juan Andres CASTRO Valenzuela" that CS1 and other local
18   suspected drug dealers were associated with.  Det. Ejde questioned CS1 about the
19   account and CS1 confirmed CASTRO was the male whom he/she referred to as "Juan" or
20   "Jose."  CS1 also showed Det. Ejde messages confirming that CASTRO had been in
21   (then) recent contact with CS1, using that Facebook account.  According to CS1 and the
22   Facebook data he/she provided, CS1 had been talking to CASTRO via Facebook
23   Messenger for purposes of making drug transactions since approximately June of 2016.

24          11.    A review of CS1's Facebook account showed CASTRO also contacted CS1
25   from additional Facebook accounts under the names of "Rebeca Spencer," "Annel
26   Baker," and "Katherine Thomas."  All three of these accounts (as well as the "Juan
27   Andres CASTRO Valenzuela" account) have been the target of search warrants issued by
28

AFFIDAVIT OF Steve Meyer - 4
USAO 2017R01238

1  this Court.  A review of CS1's phone showed CASTRO also used Mexican phone
2  numbers to communicate with CS1 via text message and voice calls.

3        12.    Det. Ejde and DEA Special Agent (SA) Anthony DelVecchio confirmed
4  CASTRO's identity via the Washington State Department of Licensing (WADOL).
5  Specifically, CASTRO's WADOL photograph matches that of the individual depicted on
6  the Juan Andres CASTRO Valenzuela account.  Furthermore, according to a law
7  enforcement database, CASTRO was involved as a suspected "cell head" for heroin
8  distribution in the Everett area during a DEA investigation that took place in 2012.  SA
9  DelVecchio researched this prior DEA case and found that CASTRO was, in fact, the
10  primary target of investigation within that case.  Agents seized multiple kilograms of
11  heroin in that investigation, but did not arrest CASTRO.

12        13.    CS1 conducted seven controlled buys of suspected heroin from the
13  CASTRO DTO and was able to introduce an undercover DEA agent (UC) to the
14  CASTRO DTO towards the end of 2017.  Unfortunately, CS1 was battling heroin
15  addiction for most of the time he/she was working with agents and admitted to obtaining
16  personal use quantities of heroin from the CASTRO DTO during and after some of the
17  controlled purchases.  Following a brief period in rehabilitation/treatment, CS1 relapsed
18  into heroin use in the spring of 2018.  In May 2018, local police arrested CS1 and
19  charged him/her with residential burglary (felony) and driving with a suspended or
20  revoked license (misdemeanor).  SOG deactivated CS1 in May 2018 due to CS1's
21  substance abuse issues.  However, agents found CS1's information to be reliable during
22  the time agents utilized him/her to gather information.

23        14.    CS1's criminal history includes a felony conviction for
24  Manufacture/Deliver a Schedule I/II Narcotic in 2013, gross misdemeanor convictions
25  for Third Degree Malicious Mischief and First Degree Criminal Trespass in 2018, Fourth
26  Degree Assault in 2015, and Third Degree Malicious Mischief in 2011; and misdemeanor
27  convictions for Second Degree Criminal Trespass and Possession of Drug Paraphernalia
28

AFFIDAVIT OF Steve Meyer - 5
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | in 2018, Third Degree Driving With a Suspended or Revoked License in 2018 and 2008,
2 | Indecent Exposure in 2013, and Third Degree Malicious Mischief in 2006.
3 |    15. As noted above, CS1 was able to introduce an undercover agent (the "UC")
4 | to the CASTRO DTO via a conversation over Facebook Messenger (with the Katherine
5 | Thomas Facebook account).  The UC was able to conduct three purchases of heroin from
6 | the CASTRO DTO, through Sarmiento, before the end of 2017.  During the first
7 | purchase, the UC used a combination of communications over Facebook Messenger (with
8 | the Katherine Thomas account) and Target Telephone numbers to complete the
9 | transaction.  During the UC's second purchase, he/she communicated with the DTO
10 | through the Katherine Thomas Facebook account and a Target Telephone (Mexican
11 | telephone number 52-668-199-4039).  The UC conducted a third transaction with the
12 | DTO in December 2017.  Again, the UC communicated with the CASTRO DTO over the
13 | Katherine Thomas Facebook account and Mexican telephone number 52-668-199-4039.
14 |    16. In January 2018, agents received hundreds of pages of Facebook account
15 | information from the Katherine Thomas account, pursuant to a federal search warrant.
16 | This information received from Facebook clearly showed use of the Katherine Thomas
17 | account for drug trafficking purposes, just as agents had suspected.  Agents later received
18 | court authorization to search additional accounts associated with the CASTRO DTO and
19 | found very similar data of evidentiary value.  The following review of the Katherine
20 | Thomas Facebook account will serve as an example of the types of data/information and
21 | content agents received from the search warrants later executed on additional CASTRO
22 | DTO accounts, including an account in the name "Rudy Jackson."
23 |    17. Facebook records showed account number "100021806071829," which is
24 | associated with the vanity name of "Katherine.thomas.104418," was registered on August
25 | 24, 2017, at 19:19:37 UTC.  The verified cell phone number associated with this account
26 | was "+526681994039," which was verified through Facebook on the day the account was
27 | established.  Facebook records showed a listing of internet protocol (IP) addresses
28 |

AFFIDAVIT OF Steve Meyer - 6
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | captured during different activities on Facebook (such as logging in or sending an
2 | attachment).

3 |   18.   These records also showed three linked accounts used by the same digital
4 | device/computer:  Katherine Thomas (100021806071829), Florencio Castro Valenzuela
5 | (100006465750228), and Annel Baker (100017854953772).  Agents had separately
6 | established this same connection between these accounts based on CS1's information and
7 | their own records searches.  Agents know the CASTRO DTO used the Annel Baker
8 | account previously in the same manner as they used the Katherine Thomas account,
9 | based on CS1's information.

10 |   19.   Facebook records showed the listed date of birth on the Katherine Thomas
11 | account as a date in February 1990.  Juan CASTRO's criminal record lists his date of
12 | birth as that same February date, but in 1986.  Agents suspect the common birthdate
13 | between the Katherine Thomas Facebook account and Juan CASTRO is no coincidence,
14 | and that CASTRO most likely used it because it was a date he could easily remember.

15 |   20.   These Facebook records also listed all of Juan CASTRO's Facebook
16 | friends associated with this particular account and their Facebook account numbers.  As
17 | expected, the UC's Facebook account was also listed in this section of the report.  Agents
18 | identified these Facebook friends based on their names and Facebook photographs, and a
19 | comparison with WADOL records.  Agents conducted surveillance on many of these
20 | individuals, and suspected they were heroin distributors for the CASTRO DTO in
21 | Washington.

22 |   21.   The last portion of the Facebook records was a chronological listing of
23 | messaging strings, separated by individual Facebook accounts.  This portion of the
24 | records corroborated agents' suspicions regarding these individuals' work as heroin
25 | distributors for the DTO.  These messaging strings were similar to text message
26 | conversations commonly found on mobile phones, though these messaging conversations
27 | were between the Katherine Thomas account and its Facebook friends.

28 |

AFFIDAVIT OF Steve Meyer - 7
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

22.     Agents identified COREY RILEY as a listed friend on the "Rudy Jackson" account. Agents were able to compare RILEY's Facebook photographs to his photograph in the WADOL database. During a Facebook messaging conversation between CASTRO (via the "Rudy Jackson" account) and Corey RILEY that took place on August 6, 2018, the two agreed to conduct a transaction at RILEY's residence in Puyallup, Washington. The pertinent details of this initial conversation are documented below:

- RILEY:            How are you who is this?
- CASTRO:          Who told you to contact me?
- RILEY:            I remember you from the last time we have some of the same friends I deal with to
- CASTRO:          After your provider called me, I changed the facebook account many times and my phone number changed every month.
- CASTRO:          Who do you know about my facebook friends?
- RILEY:            Well I thought you contacted me first here recently then I looked at your friends and I know some of them and what they do so I
- CASTRO:          ok ok
- CASTRO:          you have a phone number
- CASTRO:          here not is safe
- RILEY:            Of course 253 9514638
- RILEY:            Thanks
- CASTRO:          I will send text to you.

23.     Agents believe RILEY then provided CASTRO with his home address (using a separate means of communication, e.g., a text message) and the two agreed to meet there. However, later in the Facebook messaging conversation, CASTRO sent RILEY a Google Maps pin with the precise location of a residence in Puyallup, 9121

AFFIDAVIT OF Steve Meyer - 8
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  162nd Street East.  Agents believe RILEY actually resided at 9121 Washington Highway

2  162, and CASTRO had mistakenly identified RILEY's address based on the similarity

3  between the numbers and streets.

4      24.     At 5:17 p.m., CASTRO sent RILEY a message which read, "8 minutes

5  away."  At that time, tracking data for Target Vehicle 3 (one of the identified DTO

6  courier vehicles, driven at that time by Juan Jose Higuera Gonzalez) showed the vehicle

7  was in close proximity to the (incorrect) residence CASTRO provided via Google maps,

8  on 162nd Street East.  Around that time, CASTRO tried to contact RILEY via Facebook,

9  the pertinent details are documented below:

10  • CASTRO:     I finding the house

11  • CASTRO:     I driving a white Honda Accord (TV3)

12  • CASTRO:     Is it down the alley?

13  • CASTRO:     ??

14  • RILEY:      No it's off of the main road state route 162

15  • CASTRO:     ??

16  • CASTRO:     I was at other place

17  • RILEY:      Yes

18  • CASTRO:     I was close at Walmart at 160 and meridian

19  • RILEY:      Ok you want to meet me there

20  • CASTRO:     yes, wait there

21  • RILEY:      at my place ok

22  • CASTRO:     yes

23      25.     After this exchange, tracking data for TV3 showed the vehicle left the

24  (incorrect) residence on 162nd Street and traveled to 9121 Washington Highway 162,

25  Puyallup, Washington.

26      26.     On August 11, 2018, RILEY initiated another Facebook conversation with

27  CASTRO on the "Rudy Jackson" account.  The pertinent details are documented below:

28

AFFIDAVIT OF Steve Meyer - 9
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- RILEY:          I'll call or text you tomorrow ok buddy.
- CASTRO:          ok
- CASTRO:          hey??
- CASTRO:          $1600 you have??
- CASTRO:          where you are
- CASTRO:          he is close
- CASTRO:          you think that will be ready soon?
- RILEY:          Probably later today or tomorrow early I'll let ya know a little later ok.
- CASTRO:          ok
- CASTRO:          you're ready??

27.     Based on this interaction, and the price CASTRO expected, agents estimate RILEY typically received 25 to 50 grams of high-purity heroin during each transaction with CASTRO.  Agents believe he received at least 25 grams on this occasion.  TV3's tracking data showed the vehicle traveled to RILEY's residence on August 13, 2018, and remained there for about three minutes before leaving.  This type of travel pattern is consistent with other drug deliveries by the CASTRO DTO couriers as observed during both physical and electronic surveillance during the investigation.

28.     On December 4, 2018, I swore out an Affidavit in support of a Complaint, and United States Magistrate Judge Theresa L. Fricke issued a federal arrest warrant for RILEY.  On December 6, 2018, agents executed more than 70 federal search warrants throughout Western Washington in conjunction with this investigation.  During the execution of these warrants, agents seized over 50 pounds of drugs, to include heroin, crystal methamphetamine, suspected cocaine or fentanyl powder, and marijuana; an estimated 10,000 pills (suspected to contain fentanyl); hundreds of thousands of dollars in cash drug proceeds; 50 firearms; and dozens of vehicles.  Agents also arrested dozens of members of the DTO, but were unable to locate RILEY.

AFFIDAVIT OF Steve Meyer - 10
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**B. Arrest of Corey RILEY**

29.     On March 28, 2019, detectives with the Auburn Police Department's Special Investigations Unit (APD-SIU) established surveillance near 8400 Pacific Avenue, Tacoma, Washington.  Based on information APD-SIU received from an individual cooperating with law enforcement, they believed RILEY was distributing heroin in the area.  DEA Special Agent Jeremy Tan provided a copy of RILEY's arrest warrant and WADOL photo to assist in RILEY's identification.

30.     At approximately 3:45 p.m., APD-SIU Detective Ashton Pearson observed RILEY walk into the Chevron gas station at 8400 Pacific Avenue.  He alerted other detectives and they moved in to make the arrest.  Once in custody, detectives informed RILEY of his *Miranda* rights, which he acknowledged, then searched him incident to arrest.  Officers found a small clear baggy containing a brown substance in RILEY's pant pocket.  Detectives asked RILEY what the substance was, and he stated it was heroin.  Detectives later field-tested the substance, and confirmed it was approximately 3.4 grams of heroin.  Additionally, detectives seized a **black LG smart phone, IMEI 355931090690600** from RILEY.  RILEY provided officers with signed, written consent to search the phone, however, he later revoked his consent prior to initiation of the search.  I am thus submitting this Affidavit in support of a warrant authorizing the search of the **black LG smart phone, IMEI 355931090690600** seized from COREY RILEY on March 28, 2019.  Since RILEY's arrest, his phone has been in law enforcement's secure custody.

31.     On April 3, 2019, a Grand Jury returned an Indictment against RILEY, charging him with a single count of Distribution of a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.  That same day, Magistrate Judge Fricke ordered RILEY detained and remanded him to the custody of the United States Marshals.

AFFIDAVIT OF Steve Meyer - 11
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# V.    COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

32.    Drug traffickers use cellular telephones as a tool or instrumentality in committing their criminal activity.  They use them to maintain contact with their suppliers, distributors, and customers.  They prefer cellular telephones because, first, they can be purchased without the location and personal information that landlines require.  Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.  Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily.  Since cellular phone use became widespread, every drug dealer I have interacted with has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business.  Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes.  This includes the following:

a.    The assigned number to the cellular telephone (known as the mobile directory number or MDN), and/or the identifying telephone serial number (Electronic Serial Number (ESN), Mobile Identification Number (MIN), International Mobile Subscriber Identity (IMSI) number, or International Mobile Equipment Identity (IMEI) number) are important evidence because they reveal the service provider, allow agents to obtain subscriber information, and uniquely identify the telephone.  This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

b.    The stored list of recent received calls and sent calls is important evidence.  It identifies telephones recently in contact with the telephone user.  This is valuable information in a drug investigation because it will identify telephones used by

1  other members of the organization, such as suppliers, distributors and customers, and it
2  confirms the date and time of contacts.  If the user is under surveillance, it identifies what
3  number he called during or around the time of a surveilled drug transaction or meeting.
4  Even if a contact involves a telephone user not part of the conspiracy, the information is
5  helpful (and thus is evidence) because it leads to friends and associates of the user who
6  can identify the user, help locate the user, and provide information about the user.
7  Identifying a defendant's law-abiding friends is often just as useful as identifying his
8  drug-trafficking associates.
9          c.      Stored text messages are important evidence, similar to stored
10  numbers.  Agents can identify both drug associates, and friends of the user who likely
11  have helpful information about the user, his location, and his activities.
12          d.      Photographs and videos on a cellular telephone are evidence because
13  they help identify the user, either through his or her own picture, or through pictures of
14  friends, family, and associates that can identify the user.  Pictures also identify associates
15  likely to be members of the drug trafficking organization.  Some drug traffickers
16  photograph groups of associates, sometimes posing with weapons and showing
17  identifiable gang signs.  Also, digital photos often have embedded "geocode" information
18  within them.  Geocode information is typically the longitude and latitude where the photo
19  was taken.  Showing where the photo was taken can have evidentiary value.  This
20  location information is helpful because, for example, it can show where coconspirators
21  meet, where they travel, and where assets might be located
22          e.      Stored address records are important evidence because they show the
23  user's close associates and family members, and they contain names and nicknames
24  connected to phone numbers that can be used to identify suspects.
25          f.      It is common for drug traffickers to use encrypted means of
26  communication, such as WhatsApp, Signal, Wickr, and Telegram, to attempt to avoid
27  detection by law enforcement.  It is common for drug traffickers to install and use these
28  apps on their phones in order to make encrypted calls and send encrypted messages.

AFFIDAVIT OF Steve Meyer - 13
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1

## VI.   CONCLUSION

2   33.   For the reasons set forth above, I believe there is probable cause to believe

3 that evidence, fruits, and instrumentalities of violations of Title 21, United States Code,

4 Sections 841(a)(1), 843(b), and 846, will be found in a search of COREY RILEY's cell

5 phone, specifically, a **black LG smart phone with IMEI 355931090690600**, presently

6 in the secure custody of the DEA in Tacoma, Washington.

7

8

9

10                                        STEVE MEYER, Special Agent
                                          Drug Enforcement Administration
11

12

13   SUBSCRIBED and SWORN TO before me this _16_ day of April, 2019.

14

15

16   J. RICHARD CREATURA
                                          United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF Steve Meyer - 14
USAO 2017R01238

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **ATTACHMENT A**
### **Item to be Searched**

**A black LG smart phone with IMEI 355931090690600**, seized from the person of Corey RILEY on March 28, 2019, and presently in the secure custody of the Drug Enforcement Administration in Tacoma, Washington.

AFFIDAVIT OF Steve Meyer - 15
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**
**Items to be Seized**

From the cellular telephone listed in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes: distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses, in violation of Title 21, United States Code, Section 846; use of a communications facility in furtherance of a felony drug offense, in violation of Title 21, United States Code, Section 843(b); and importation of controlled substances, in violation of Title 21, United States Code, Section 952:

- Assigned telephone number and identifying serial number (e.g., ESN, MIN, IMSI, IMEI);

- Stored list of recent received, sent, or missed calls;

- Stored address records and stored contact information;

- Stored photographs and videos related to the aforementioned crimes of investigation, such as photographs and videos of narcotics, currency, guns or other weapons, tracking numbers, codes, account information, suspected criminal activity, and/or the user of the phone or co-conspirators, including any GPS data associated with the photo or video; and

- Stored messages that relate to the above-listed federal crimes or that may show the user of the phone and/or coconspirators, including WhatsApp messages, Apple iMessages, Blackberry Messenger messages, or other similar messaging services where the data is stored on the telephone.

AFFIDAVIT OF Steve Meyer - 16
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800